UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,           :           INFORMATION

      - v. -                                 :

PHIL DE VINCENTIS,                   :

                            Defendant.           :           07 Cr. 1138

- - - - - - - - - - - - - - - - - - - - - - - - - x

**COUNT ONE**

(Conspiracy to Commit Bank Fraud)

    The United States Attorney charges:

**Introduction**

    1.  At all times relevant to this Information:

        a.  PHIL DE VINCENTIS, the defendant, was a customer of Gary J. Confredo.

        b.  Gary J. Confredo, a co-conspirator not named as a defendant herein, was a purported independent financial consultant who offered to assist individuals in securing business financing. Confredo operated businesses at various times under the names Granite Management Services; Moonlit Consultants, Inc.; Tristate Management; GJC Financial Resources, Inc.; Slim Line Financial; and Comark Financial Services Group.

    2.  At all times relevant to this Information, Citibank, N.A.; Fleet, N.A. ("Fleet"); Chase Manhattan Bank

("Chase"); Midlantic Bank, N.A. ("Midlantic"); and Summit Bank ("Summit"); were banking corporations, the accounts of which were insured by the Federal Deposit Insurance Corporation. Among other lines of business, Citibank, Fleet (formerly National Westminster Bank of New Jersey ("NatWest")), Chase, Midlantic, and Summit were in the business of providing business loans to companies which met, or appeared to meet, the bank's lending qualifications.

**The Conspiracy**

3. From in or about March 1995, through in or about early 1998, in the Southern District of New York and elsewhere, PHIL DE VINCENTIS, the defendant, Gary J. Confredo, a co-conspirator not named herein as a defendant, and others known and unknown, unlawfully, willfully, and knowingly combined, conspired, confederated and agreed together, and with each other, to commit offenses against the United States, to wit, bank fraud, in violation of Title 18, United States Code, Section 1344; and making false statements and reports in loan applications to financial institutions, in violation of Title 18, United States Code, Section 1014.

4. It was a part and an object of the conspiracy that PHIL DE VINCENTIS, the defendant, and others known and unknown unlawfully, willfully, and knowingly, would and did execute and attempt to execute a scheme and artifice to defraud a financial

2

institution, and to obtain money, funds, credits, assets, securities, and other property owned by and under the custody and control of a financial institution, by means of false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1344.

5. It was a further part and an object of the conspiracy that PHIL DE VINCENTIS, the defendant, and others known and unknown, unlawfully, willfully, and knowingly would and did make a false statement and report, and overvalue property and security, for the purpose of influencing in any way the action of an institution, the accounts of which were insured by the Federal Deposit Insurance Corporation, upon an application, commitment, and loan, and a change and extension of the same, by renewal and otherwise, in violation of Title 18, United States Code, Section 1014.

### Means and Methods Of The Conspiracy

6. Among the means and methods used by PHIL DE VINCENTIS, the defendant, Gary J. Confredo, a co-conspirator not named herein as a defendant, and others known and unknown, to achieve the objects of the conspiracy were the following:

a. Gary J. Confredo ran businesses which purportedly sought to "assist" customers in obtaining commercial loans from financial institutions and other entities. Confredo's

3

customers, however, needed Confredo's "assistance" because they were unable to secure financing through traditional sources, which, for various reasons, did not regard them or their businesses as creditworthy. PHIL DE VINCENTIS, the defendant, was one such customer and DE VINCENTIS retained Confredo to obtain business financing for his actual and purported businesses. Confredo typically charged between five and fifteen percent of the loan amount as his fee.

    b. In order to induce financial institutions and commercial lenders to lend funds to his customers (such as PHIL DE VINCENTIS), Gary J. Confredo and his co-conspirators created false and fictitious financial documents. As a result of his prior experience as a commercial loan officer at a financial institution, Confredo was familiar with some of the standards that financial institutions used to evaluate business loan applications, and the level of financial performance and/or profitability that financial institutions would require before extending loans in given amounts. Over the period of the conspiracy, using this experience, Confredo created a three-year set of financial statements for PHIL DE VINCENTIS's actual and purported businesses: Royal Packaging Sales, M & G Hair Replacement, Deve Distributors and SKD Enterprises. These documents all reflected a false record of profitability for the businesses in order to induce various financial institutions and

other commercial lenders to extend different types of commercial financing to these businesses.

   c. Gary Confredo then recruited an accountant to generate three years' worth of purportedly authentic corporate income tax returns for Royal Packaging Sales, M & G Hair Replacement, Deve Distributors and SKD Enterprises, and personal federal income tax returns in the name of a relative of PHIL DE VINCENTIS, who was also listed as the purported president of these companies (hereinafter the "Relative"). The figures on those fraudulent returns were consistent with the figures Confredo had used in the fraudulent financial statements he had created.

   d. PHIL DE VINCENTIS and others known and unknown then submitted, and caused to be submitted, the false and fraudulent financial statements and federal income tax returns to Citibank, Fleet, Chase, Midlantic, and Summit in support of various commercial loan and line-of-credit applications in the names of DE VINCENTIS's actual and purported businesses.

### Overt Acts

  7. In furtherance of this conspiracy and to effect its illegal objects, the defendant PHIL DE VINCENTIS and others known and unknown committed the following overt acts, among others, in the Southern District of New York and elsewhere:

   a. On or about December 5, 1995, PHIL DE

5

VINCENTIS caused to be submitted in support of a loan application in the name of M & G Hair Replacement Inc. to Fleet Bank's predecessor, National Westminster Bank of New Jersey ("NatWest"), the following false and fraudulent documents: (1) documents purporting to be copies of authentic Form 1120S federal tax returns for M & G Hair Replacement Inc. for the years 1992, 1993 and 1994; (2) documents purporting to be copies of authentic Form 1040s personal federal tax returns for the years 1992, 1993, and 1994 in the name of the Relative; and (3) purportedly accurate financial statements for M & G Hair Replacement, for the years 1992-93 and 1994.

       b.   On or about February 22, 1996, PHIL DE VINCENTIS issued a check in the amount of approximately $7,000 to GJC Financial Resources, which check had been drawn on an account in the name of M & G Hair Replacement at Fleet Bank's predecessor, NatWest, and which had been funded with a loan to M & G Hair Replacement from NatWest.

       c.   On and about February 23, 1996, PHIL DE VINCENTIS negotiated an approximately $9,000 check payable to himself drawn on an account in the name of M & G Hair Replacement at Fleet Bank's predecessor, NatWest, and which had been funded with a loan to M & G Hair Replacement from NatWest.

       d.   On and about February 26, 1996, PHIL DE VINCENTIS negotiated an approximately $8,000 check payable to

6

himself drawn on an account in the name of M & G Hair Replacement at Fleet Bank's predecessor, NatWest, and which had been funded with a loan to M & G Hair Replacement from NatWest.

   e. On and about February 28, 1996, PHIL DE VINCENTIS negotiated an approximately $9,000 check payable to himself drawn on an account in the name of M & G Hair Replacement at Fleet Bank's predecessor, NatWest, and which had been funded with a loan to M & G Hair Replacement from NatWest.

   f. On and about February 29, 1996, PHIL DE VINCENTIS negotiated an approximately $9,000 check payable to himself drawn on an account in the name of M & G Hair Replacement at Fleet Bank's predecessor, NatWest, and which had been funded with a loan to M & G Hair Replacement from NatWest.

   g. On and about March 4, 1996, PHIL DE VINCENTIS negotiated an approximately $9,000 check payable to himself drawn on an account in the name of M & G Hair Replacement at Fleet Bank's predecessor, NatWest, and which had been funded with a loan to M & G Hair Replacement from NatWest.

   h. On and about March 8, 1996, PHIL DE VINCENTIS negotiated an approximately $9,000 check payable to himself drawn on an account in the name of M & G Hair Replacement at Fleet Bank's predecessor, NatWest, and which had been funded with a loan to M & G Hair Replacement from NatWest.

   i. On and about April 2, 1996, PHIL DE VINCENTIS

negotiated an approximately $9,500 check payable to himself drawn on an account in the name of M & G Hair Replacement at Fleet Bank's predecessor, NatWest, and which had been funded with a loan to M & G Hair Replacement from NatWest.

   j.   On or about December 16, 1996, PHIL DE VICENTIS caused a check in the amount of approximately $1,000 which had been drawn on an account in the name of Royal Packaging Sales at Merrill Lynch to be deposited into an account in the name of M & G Hair Replacement at Fleet.

   k.   On or about September 5, 1997, PHIL DE VICENTIS caused a check in the amount of approximately $100,000 which had been drawn on an account in the name of M & G Hair Replacement at Fleet to be deposited into an account in the name of Deve Distributors at Summit Bank, New Jersey.

   l.   On or about December 29, 1997, PHIL DE VICENTIS met with an accountant who provided DE VICENTIS with a package of fraudulent financial statements for DE VICENTIS's company Deve Distributors, for submission to Chase in support of a renewal on an approximately $175,000 loan Chase had previously granted to Deve Distributors.

   (Title 18, United States Code, Section 371.)

                                    _____
                                    MICHAEL J. GARCIA
                                    United States Attorney

**December 12, 2007**        <u>U.S.A. v. PHIL De VINCENTIS</u>        <u>07 Cr.    (JSR)</u>

**Waiver of Indictment and Information filed.**
Defendant present with atty John Wallenstein, Ausa Robin More, Court reporter Eve Giniger
**Deft entered a plea of guilty.** PSI ordered. Sentencing set for March 27th at 4:00 p.m. ail set at $25,000 PRB, to be signed by deft only. Travel restricted to EDNY, SDNY and District of New Jersey.

**RAKOFF, J.**